UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-cr-10292-ADB |
| | ) | |
| STEPHEN M. DeBERARDINIS, | ) | |
| | ) | |
| Defendant | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
APPEAL OF DETENTION ORDER

This Court should affirm Magistrate Judge Bowler's decision and continue to detain Defendant DeBerardinis. By clear and convincing evidence, no condition or combination of conditions of release will reasonably assure the safety of the witnesses and the community. By a preponderance of evidence, no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

## Procedural Background

Magistrate Judge Bowler held three detention hearings. ECF Nos. 13, 25, 31. At one of them, she invited the defendant to submit more information if he thought it helpful. The defendant submitted multiple briefs, several letters of support, and information about his mental health, and his counsel argued forcefully at each of the hearings. After carefully weighing all of the defendant's information with the information provided by the government and Pretrial Services, Judge Bowler concluded that the defendant is a danger to the community, there is a substantial risk he will obstruct justice, and he is unlikely to comply with the Court's orders. She therefore ordered him detained. ECF No. 45. Her order of detention is supported by a written opinion that carefully sets forth the facts and analysis. *Id.*

## Factual Background

### A. Current Charges

The defendant harassed and threatened an interracial couple over Facebook on January 6, 2021. After the victims stated that they were going to report him to law enforcement, the defendant sent them a picture of brass knuckles with "SNITCHES GET STITCHES" written around it and threatened to burn one of the victims alive and cut off one of the victim's body parts and send them to their family, among other things. A grand jury indicted the defendant for sending threats to injure another person in interstate commerce and obstructing justice through threats and harassment.[1]

### B. Defendant's Criminal History

Judge Bowler found the defendant dangerous in part because, as she put it, "The defendant has continuously committed crime for over two decades. Many of the defendant's crimes have involved violence." ECF No. 45 at 5. The defendant's criminal record, Govt Ex. 7 from the January 27, 2022 detention hearing (hereinafter "Defendant's Criminal Record"), bears this out, showing that he has been convicted of at least 64 separate charges in at least 30 charged cases. Many of his convictions involved violence, including six convictions for violating the Abuse Prevention Act, two convictions for disorderly conduct, and convictions for arson, bomb hoax, stalking/following, and threatening.[2] *Id.*

---

[1] Facts supporting the grand jury's conclusion that it was the defendant who sent the threats are discussed *infra* at pages 8-9.

[2] Under 18 U.S.C. § 3156(a)(4), "the term 'crime of violence' means—(A) an offense that has an element of the offense the use, attempted use, *or threatened use* of physical force against the person or property of another." (emphasis added).

Judge Bowler also found the defendant dangerous because "[h]is proclivity for violent behavior has resulted in 13 restraining orders including two lifetime orders." ECF No. 45 at 5. Judge Bowler stated in the defendant's first detention hearing that she did not think she had ever seen a person with that many restraining orders before. ECF No. 26 at 22. Moreover, the defendant has repeatedly violated restraining orders, resulting in six criminal convictions. *See* Defendant's Criminal Record. One individual testified in state court that the defendant once defied a restraining by coming to her house with a gun, and on a separate occasion the defendant told her and one of his very close female relatives that they should be gang-raped and should kill themselves. *See* Govt Ex. 5 from the January 27, 2022 detention hearing.

The Defendant's Criminal Record also shows that he committed numerous crimes related to lack of veracity, including 10 convictions for making false 911 calls, 8 convictions for impersonating a police officer, 7 convictions for uttering, 5 convictions for false report of a crime, 2 convictions for larceny by check, 2 convictions for counterfeiting, identity fraud, credit card misuse, forgery, and bomb hoax.

Judge Bowler further concluded that the defendant is unlikely to comply with the Court's orders, in part because the Defendant's Criminal Record shows that he violated probation in at least 18 cases and for at least 38 crimes. He also has 36 defaults on his record.

**C. Additional Threatening Conduct in September 2021, Just Before His Arrest**

In September 2021, a reporter saw the defendant trying to punch protestors at a rally. The police had to restrain the defendant. The reporter published a story that included a photograph of the defendant with the caption "*Police supporter getting dragged away after failing to punch some protesters in West Roxbury.*" The reporter then received an email that threatened, in part:

"COME FOR YOUR HARD HAHAHAHAHAHA." Govt Ex. 8 from the January 27, 2022 detention hearing.[3] That email came from an account that both the reporter and the government have associated with the defendant and his business. Specifically, in a search of the defendant's phone, the government confirmed that emails were sent from the defendant's phone to the reporter's email address on the same dates and times and from the same email account as the threats the reporter received by email. The subscriber information for the email account that sent the threats also lists the defendant's date of birth. The government is aware of additional emails that the defendant sent to the reporter that confirm that the above threat is a true clear threat. The threats the defendant sent to the reporter are similar to the threats he sent to the victims in January: both included taunting laughter in all capital letters, and both threats were sent after the victims disclosed or stated they would disclose the defendant's violence to someone else—in the first case, the authorities, in the second, the public.

## Argument

### A. Magistrate Judge Bowler's Decision is Entitled to Deference

The first ground for affirming Judge Bowler's decision is that even though a District Court considers detention *de novo*, the Court should defer to the Magistrate Judge when that judge issues a careful and considered decision. *See United States v. Simone*, 317 F. Supp. 2d 38, 42 (D. Mass. 2004) ("In reviewing the magistrate judge's detention orders, the court must

[3] The defendant objected to this exhibit at the hearing on grounds of relevance. The Court reserved judgment on this objection. An account of the defendant's violent behavior in September 2021 is relevant both because it (a) directly rebuts the defendant's earlier arguments that he had not engaged in threats or violence post-January 6, and (b) gives more evidence of the defendant's proclivity for violence and retaliation. It is therefore at least as relevant as the letters from the defendant's loved ones who want him home and from others attesting to his non-violence.

undertake an independent review, giving her decision such deference as the care and consideration manifested by the magistrate judge warrant.") (Wolf, D.J.). Judge Bowler applied considerable care and consideration here. She held three detention hearings, invited the defendant to submit more evidence, considered all the evidence and exhibits submitted by both sides, and wrote a well-reasoned decision that explains the evidence and how it supports her conclusions. On this, this Court should defer to Judge Bowler, affirm her decision, and detain the defendant.

**B. The Defendant is Dangerous and Likely to Obstruct Justice**

The defendant's record provides clear and convincing evidence that he is dangerous and likely to retaliate against the victims. *See* 18 U.S.C. § 3142(g)(4). The defendant has been convicted of at least 64 crimes, at least 12 of which involve violence, and he has violated multiple restraining orders. The FBI found over 70 knives and 22 brass knuckles in the defendant's home, among other weapons. Govt Ex. 4 from the January 27, 2022 detention hearing. These weapons are the type that could be used to carry out the threats made against the victims in this case. The defendant has been charged with a crime of violence under 18 U.S.C. § 3142(g)(1). *See* 18 U.S.C. § 3156(a)(4)(A) (defining a crime of violence to include an offense where an element of the offense is "the threatened use of physical force against the person or property of another").

The Defendant's Criminal Record shows a clear pattern. This defendant harasses and threatens people, the victims complain to the authorities about him, courts order him to stay away from the victims, and then the defendant violates those court orders. In this case, after the victims said they would report the defendant to law enforcement for his harassment, he then

threatened one of the victims with burning them alive and cutting off their body parts, among other things. Judge Bowler held that "the retaliatory language in the defendant's Facebook posts suggests that there is a substantial risk of obstruction of justice." Moreover, even though the names of the victims have been protected in this case, Judge Bowler found that "[t]he defendant knew the identity of the couple[,]" and the victims' names are in the defendant's Facebook account. ECF No. 45 at 3.

The length of the government's investigation does not impact the defendant's dangerousness and should not change the decision to detain him. This investigation involved a computer crime, and prior to charging him the government took multiple investigative steps to ensure that it was the defendant who sent the threats to the victims, and not somebody else. Government investigations like this take time. The defendant argues that he should be released because during the federal investigation he was on good behavior and did not go after the victims between the date of the crime and the date of his arrest. This is irrelevant, however, because the defendant was unaware that the victims had contacted law enforcement until the day he was arrested, as defense counsel admitted during oral argument. Now that the defendant knows that the victims reported him to law enforcement, he has an even stronger reason to retaliate than he did on January 6. Moreover, the defendant was not peaceful throughout the investigation. Prior to his arrest, the defendant allegedly tried to punch people at a rally and threatened a reporter who published a story about it.

The defendant has asked that he be returned home to help his family. But his family's need of him is irrelevant to whether he is dangerous to others. *United States v. Simpson*, No. 2:08-CR-733 TS, 2010 WL 129793 (D. Utah Jan. 8, 2010) is instructive. In that case, the

defendant argued against detention because he was a major source of support for his adult child and his parents, who were in declining health. The District Court held, "[i]t is an unfortunate reality that a defendant's family may be disadvantaged by a defendant's pretrial detention," but the defendant's support of his family did not "have a material bearing on whether there are conditions of release that will assure the safety of the community." *Id.* at *4. The same is true here: the needs of the defendant's family should not and cannot outweigh the danger he poses to the victims, witnesses, and others.

Similarly, the letters of support that the defendant submitted to the Court are inconsistent with the defendant's clear record. The same is true of the Task Force Officer's statement that the defendant is not violent. That officer was not involved in the investigation that led to these charges, and he was not aware of the defendant's criminal record. Apparently, none of these individuals have full knowledge of the defendant's full record and history of violent behavior.

**C. The Defendant is Unlikely to Comply with Court Orders**

The defendant should not go home with conditions of release, because his criminal record demonstrates a long history of failing to comply with court orders. Judge Bowler held that, "although the defendant is a lifelong resident of Boston, his criminal history is replete with defaults, and he cannot be expected to appear as required." ECF No. 45 at 5. Judge Bowler's conclusion is supported by a record that includes 36 defaults, 6 violations of the Abuse Prevention Act, and 18 violations of probation. These failures conclusively support Judge Bowler's finding by a preponderance of the evidence that the defendant cannot be expected to appear in this Court as required, no matter the conditions placed on him, and is likely to violate

other conditions of release such as orders to have no contact with the victims and to stay off the Internet.

There is no doubt the defendant's family loves him, relies on him, and supports his release. Unfortunately, that family support has not stopped the defendant from committing crimes in the past. The defendant has lived in the same home, with many of the same family members, for his entire life. The defendant cannot be trusted to comply with court orders, given that he has repeatedly violated them after being returned to this environment.

This Court should place little faith in the fact proffered by the defense that the defendant has been recommended for participation in the Roxbury District Court Mental Health Court and the opinion that this program will help him comply with court orders and reduce his criminal behavior. This has not worked in the past. According to the defense, the defendant participated in this program once before, in 2017-2018. Judge Bowler correctly held that the Mental Health Court program was not particularly effective, given that the defendant had incurred at least six restraining orders against him after completing the program the first time. ECF No. 26 at 16, 22. The defendant's alleged willingness to participate in a program that was previously unhelpful in curbing his criminal conduct is not a basis for releasing him.

**D. Other Factors Support Detaining this Defendant**

Pursuant to 18 U.S.C. § 3142(g), several other factors support affirming Judge Bowler's decision to detain the defendant. First, the weight of the government's evidence against the defendant is strong. 18 U.S.C. § 3142(g)(1). Multiple pieces of evidence confirm that it was the defendant who threatened the victims. The Facebook account that sent the threats is in the defendant's name, the account's profile photo is a picture of the defendant, and the account has

posted numerous photos of the defendant, many of which look like selfies. In addition, the account is linked to phone numbers and IP addresses that appear linked to or used by the defendant. Moreover, the account contains numerous other messages of violence and racism that are consistent with the threats and harassment made in this case. *See* Govt Ex. 1 from the January 27, 2022 detention hearing. Finally, the defendant owns brass knuckles and wears a t-shirt with a picture of brass knuckles surrounded by "SNITCHES GET STITCHES" that is very similar to the threat he sent the victims. *See* Govt Exs. 3,4, and 6 from the January 27, 2022 detention hearing. He also posted photos of a similar t-shirt with the same phrase and weapon to his account. *See* Govt Ex. 6 from the January 27, 2022 detention hearing.

Second, as Judge Bowler noted in her decision, the defendant is subject to a lengthy period of incarceration if convicted. ECF No. 45 at 2. He faces up to 20 years in prison. The government's preliminary sentencing guideline calculations yield a guideline range of 77-96 months before acceptance of responsibility and 57-71 months after acceptance of responsibility. These guideline ranges far exceed the amount of time the defendant has spent during his previous stints in jail.

Third, the defendant's criminal record shows that he was on pre-trial release from two different courts when he committed the instant crimes. 18 U.S.C. § 3142(g)(3)(B).

The defendant's argument that should return home because he is not receiving the same medications in jail that he received in the community is unpersuasive. As the government explained more fully in its brief opposing release submitted to the Court on December 15, 2021, the defendant's pre-detention medication regimen failed to prevent him from committing crimes. *See* ECF No. 29. The First Circuit further instructs courts to defer to prison medical personnel.

*Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (*en banc*) (internal citations omitted). Finally, any concerns for the defendant's health are outweighed by the danger he poses to the public.

**E. No Conditions are Sufficient to Protect the Community from this Defendant**

As Judge Bowler correctly concluded, there are no conditions that would reasonably assure the defendant's appearance and the safety of the community. ECF No. 45 at 2, 5. Conditions of release have not worked for this defendant in the past. This Court should not send him home to the same place where he was living when he committed so many crimes and violated so many court orders. An ankle bracelet would not stop the defendant from using the internet, nor provide a mechanism for Probation to find out when he did so. A number of adults live in and visit his home. They likely have cell phones, computers, and tablets, and could easily give the defendant access. Nor would an ankle bracelet actually prevent the defendant from leaving his house if he were determined to do so.

There are no conditions that would sufficiently protect the victims and the community from this defendant and ensure his timely appearance before this Court.

**Conclusion**

Judge Bowler reviewed and carefully considered all of the defendant's evidence and arguments. She found that there is a rebuttable presumption of detention because the defendant is charged with a crime of violence. Judge Bowler also found that the defendant must be detained because, clear and convincing evidence demonstrated that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community, and a preponderance of evidence showed that no condition or combination of conditions of

release will reasonably assure the defendant's appearance as required. This Court should affirm that decision.

Respectfully submitted this 3rd of February 2022,

JOSHUA S. LEVY
First Assistant United States Attorney

*/s/ Torey B. Cummings*
Scott L. Garland
Torey B. Cummings
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant U.S. Attorney